# H. W. ADAMS v. O. A. KNUDTSON AND ANOTHER.[1]

July 25, 1924.

No. 24,037.

**Finding as to share of profits not to be reversed because court may have adopted certain method of computation.**

1. A general finding that plaintiff's share of the profits of a business was a stated sum cannot be successfully attacked on the ground that the court arrived at the amount stated by adopting a particular method of computation, even though it seems probable that it was adopted.

**Motion to amend unsatisfactory indefinite findings.**

2. When the findings are not sufficiently definite and specific to satisfy a party, he should move for an amendment of them rather than for a new trial.

**Construction of salary contract for 8 months.**

3. A contract providing that plaintiff should receive a stated salary for a period of eight months, and, at the end of that period a pro rata one-third share of the net profits earned from July 1, 1919, to July 1, 1920, is construed to mean that plaintiff should share in the profits for eight months and not for twelve.

Action in the district court for Hennepin county for an accounting. The substance of the pleadings will be found in the second paragraph of the opinion. The case was tried before Leary, J., who after deciding that plaintiff was entitled to an accounting sent to defendants' counsel the letter quoted in the fourth paragraph of the opinion. After the referee had filed his report and a further hearing, the court made findings as stated in the ninth paragraph of the opinion. From an order denying their motion for a new trial, defendants appealed. Reversed.

*James E. Peterson*, for appellants.

*Elliott, Doll & Coursolle*, for respondent.

[1]Reported in 199 N. W. 817.

LEES, C.

Action for the recovery of a share of the profits of a tractor school, in which plaintiff was employed as an instructor, and for the unpaid portion of his salary.

The complaint set out the contract, asked for an accounting with respect to the profits, and prayed for judgment for the amount found due upon the accounting. The answer admitted the contract, alleged that plaintiff had not lived up to its terms and in consequence had been discharged, and that upon an accounting between the parties it had been ascertained that $191.90 and no more was due to plaintiff and that a check for that amount had been tendered and refused, plaintiff claiming that a larger sum was due him.

It appears that after receiving evidence not contained in the record the trial court ruled that there should be an accounting and addressed a letter to defendants' counsel reading as follows:

"After considering the evidence and having in mind the argument of counsel, I am of the opinion that the plaintiff is entitled to one-third of the profits of the Minneapolis Auto & Tractor School from July 1st, 1919, to July 1st, 1920, and to nine-twelfths of one-third of the profits of said business for the year beginning July 1st, 1920, and ending July 1st, 1921.

"This will require an accounting and if you and Mr. Elliott can agree upon a referee, I will be glad to appoint whoever you agree upon."

Thereafter A. D. Johnson of Minneapolis was appointed referee to make an examination of defendants' books and ascertain and report to the court the profits earned by defendants' school between July 1, 1919, and July 1, 1921. The order appointing him directed that when his report was filed either party might offer additional evidence bearing on the correctness of the report or relative to matters not shown upon defendants' books. The referee was also directed to make a complete statement of the earnings and disbursements of the school, showing the proper distribution of the items in accordance with his judgment as an accountant. The report he filed covered the period between July 1, 1919, and December 31,

1921, for the reason that the books were closed at the end of each calendar year. The referee determined that the net income was $13,003.75, from which he deducted interest on capital invested at the rate of 10 per cent, or $2,703.75, leaving $10,300 as the net income of the school for the period of 30 months. His report then proceeds as follows:

"According to the contract, Mr. Adams is to receive a pro rata $\frac{1}{3}$ of these profits. Mr. Adams' monthly share of the profits is therefore 1/30 of $\frac{1}{3}$ of $10,300.00, which is $114.44. This figure multiplied by the number of months which Mr. Adams should share in the profits would be the total amount of Mr. Adams' share of the profits. The books of the company show that Mr. Adams has been alloted a share of $74.32 per month for a period of sixteen (16) months or a total of $1,189.12. The amount due Mr. Adams then is the difference between $1,189.12 and the result of $114.44 multiplied by the number of months which Mr. Adams should share in the profits."

Both parties were dissatisfied with the report and evidence was introduced bearing upon several of the matters referred to therein. Plaintiff testified that an item of over $12,000 charged as miscellaneous expense required explanation; that the charges for teachers' salaries and for depreciation were excessive; that a charge for the expense of operating a restaurant should not have been allowed; and that a portion of the amount charged as operating expense should have been charged as equipment. In short, he took the position that the books had been kept in such a manner that they showed that the profits were less than the school had actually earned. Defendants denied all this and introduced evidence tending to show that the report was incorrect because it included tuition received in the three months preceding July 1, 1919, and did not deduct tuition received in the three months preceding the end of the period covered by the report; that $890.22 of worthless accounts had been included in computing the income of the business; and that the referee had not made a sufficient allowance for depreciation in the value of the equipment. The referee attached to his report state-

ments showing in detail the result of his examination of the books and testified at length as to how the figures appearing on the statements had been compiled.

The court found that plaintiff was employed from October 8, 1919, until March 21, 1921; that his salary had been paid up to March 1, 1921, and that $133.33 was due him for the 21 days he was employed in March; that under the contract he had the right to receive $2,365.09 as his share of the profits, of which $1,189.12 had been paid, and ordered judgment in his favor for $1,309.30, with interest. The contract provided that plaintiff's services were engaged until July 1, 1920, but it appears that he continued to serve defendants thereafter under the same contract modified in one particular.

Defendants moved for a new trial on the following grounds: That the court erred in holding that plaintiff should share in the profits from and after July 1, 1919; in adding to the income tuition received prior to July 1, 1919, and not deducting tuition received for the corresponding period at the end of the term covered by the referee's report; in failing to deduct from the income the worthless accounts, and in refusing to make a greater allowance for depreciation than was made by the referee. The motion was denied and defendants appealed.

By taking $114.44, specified in the referee's report as plaintiff's monthly share of the profits, and multiplying it by 20⅔, the number of months intervening between July 1, 1919, and March 21, 1921, we get $2,365.09, the amount awarded by the court to plaintiff as his share of the profits. This is the sole basis for the inference drawn by the defendants that the court found against them as to all the matters mentioned in their motion for a new trial. The inference is not unreasonable, but it is not conclusive. The court found generally that plaintiff's share of the profits was the above named sum. It seems probable, but it is not certain, that the court made the referee's report the basis for this finding, arriving at the result by the method suggested. But it is entirely possible that, after hearing all the evidence, the court may have concluded that the defendants should not have received all the credits the

referee allowed upon a bare inspection of their books and that the excessive allowance in their favor offset their claim for additional credits insofar as they were entitled to have it allowed. There was no motion for amended or for more specific findings. Such a motion, rather than one for a new trial, should be made whenever findings are not definite enough to satisfy either party. 3 Dunnell, Minn. Dig. § 9865. Not knowing how the trial court arrived at the conclusion that plaintiff's share of the profits was the sum named in the findings, we cannot say that there was error in the particulars specified in the motion for a new trial and repeated in the assignments of error, and we cannot assume, for the purpose of demonstrating error in the conclusions arrived at, that the trial judge made his computations in any particular manner. Jarecki Mnfg. Co. v. Ryan, 114 Minn. 38, 129 N. W. 1055, 130 N. W. 948.

But in one respect the record does show what the trial court took into consideration in reaching a conclusion. The letter to defendants' attorney shows the construction which the court placed upon the contract in question. The contract provided that plaintiff's services should begin November 1, 1919, and end June 30, 1920, and that plaintiff should receive a salary of $150 a month for 8 months and a share in the profits defined in the following language:

"The first monthly salary to be made (paid) on the last day of November, 1919, and at the end of said period of eight months, a pro-rata one-third share of the net profits earned by said business from July 1st, 1919, to July 1st, 1920."

This language needs construction, for it is not clear whether the parties intended that plaintiff should receive one-third of the profits for 8 or for 12 months. He was to have a salary for only 8 months, that is, from November 1, 1919, when his services were to begin, until July 1, 1920, when they were to end. That much is clear. The use of the expression "pro rata" indicates to our minds an intention that his share of the profits should be limited to a corresponding period, that is to say, he should have $\frac{1}{3}$ of 8/12 of the net profits earned between July 1, 1919, and July 1, 1920, instead

of $\frac{1}{3}$ of the entire profits earned between those dates. Under the trial court's construction of the contract, plaintiff has been awarded a share in the profits for 4 months more than he had a right to share in them under our construction, and hence the findings and conclusions of law should be amended to conform to the construction of the contract which this court has adopted.

The order denying a new trial is reversed and the cause remanded for further proceedings in accordance herewith.